UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS MILLER,

        Plaintiff/Counter-Defendant,        No. 03-CV-74954-DT

vs.        Hon. Gerald E. Rosen

LANZO HOLDING COMPANY, et al.,

        Defendants/Counter-Plaintiffs.
_____/

OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL
JUDGMENT NOTWITHSTANDING THE VERDICT AND
ALTERNATIVE MOTION FOR PARTIAL NEW TRIAL

        At a session of said Court, held in
        the U.S. Courthouse, Detroit, Michigan
        on     March 23, 2006

        PRESENT:  Honorable Gerald E. Rosen
                             United States District Judge

## I. INTRODUCTION

Plaintiff Douglas Miller was formerly employed as the Chief Financial Officer of Defendant Lanzo Holding Company ("Lanzo"). Plaintiff was hired by Lanzo on January 11, 2000 pursuant to a written employment contract. On November 27, 2001, Plaintiff's employment was terminated. Following his termination, Plaintiff made a written request to Lanzo for certain severance and other post-termination payments to which he claimed to be entitled. Defendants denied Plaintiff's request and this breach of contract lawsuit ensued. In his Complaint, Plaintiff alleged that Defendants breached two contracts: his

January 11, 2000 employment contract and a subsequent Severance Agreement executed by the parties on January 19, 2000.

On June 16, 2005, the Court granted Defendants' motion for partial summary judgment with regard to Plaintiff's claims for payment of a bonus and for unused vacation time pursuant to his January 11, 2000 employment contract.  This left Plaintiff's breach of contract claims for unpaid salary and deferred compensation under his employment contract, and his claim for severance pay under the January 19, 2000 Agreement to be adjudicated at trial.

A three-day trial before a jury commenced on June 21, 2005.  After the close of proofs on June 24, 2005, Plaintiff made an oral motion on the record for a partial directed verdict[1] on liability (but not damages) as to the June 19, 2000 Severance Agreement, only. After hearing counsel's argument, the Court granted Plaintiff's motion and the verdict form was conformed accordingly.[2]

---

[1]   The 1991 amendments of Fed. R. Civ. P. 50 replaced the terminology "directed verdict" and  "judgment notwithstanding the verdict," or "JNOV," with the current terms "judgment as a matter of law" and "renewed judgment as a matter of law."  Therefore, although Plaintiff has used the terms "directed verdict" and "judgment notwithstanding the verdict," the Court will utilize the current terminology.

[2]  The Verdict Form asked the jury to answer the following:

1.  Did the Defendant breach the contract of January 11, 2000 in one or more of the ways claimed by the Plaintiff?  Yes_____ No _____

If your answer is "Yes," answer Questions 1A and 1B.  If your answer is "No," go on to Question 2.

The case was then submitted to the jury, and later on June 24, 2005, the jury returned its verdict. The jury found no breach of Plaintiff's January 11, 2000 employment contract and accordingly, awarded no damages for unpaid salary or deferred compensation. With respect to Plaintiff's claim for damages for breach of the January 19, 2000 Severance Agreement, however, the jury awarded Plaintiff damages in the amount of $242,680.00 plus interest through December 9, 2003 in the amount of $24,268.00. Accordingly, on June 26, 2005 Judgment was entered against Defendants in the amount of $266,948 in accordance with the jury's verdict, plus interest from the filing of the Complaint.

On June 27, 2005 Plaintiff filed the instant motion for Partial Judgment Notwithstanding the Verdict [i.e., Renewed Motion for Judgment as a Matter of Law], or in the Alternative, for Partial New Trial with respect to the jury's determination of no breach of the January 11, 2000 contract and no damages for unpaid salary or deferred compensation under that agreement. Plaintiff claims that, with respect to these claims the

---

1A.  Is Plaintiff entitled to damages for unpaid salary?  Yes ____ No ____

1B.  Is Plaintiff entitled to damages with respect to his claim for deferred compensation?  Yes _____ No _____

If "Yes," insert amount: _____

2.  What is the amount of Plaintiff's damages for breach of the severance agreement of January 19, 2000?  Insert amount: _____

3.  What is the amount of interest on the amount[s] above at the rate of 5% up through December 9, 2003?  Insert amount: _____

jury's verdict is not supported by the evidence.[3] In particular, Plaintiff contends he is entitled to a judgment as a matter of law for the sums represented by a paycheck for the week of October 14-20, 2001 in the amount of $3,461.53, which he never cashed, as well as 33 checks in the amount of $692.30, each, signed by Defendants' principals beginning in April 2001 until November 2001 and made payable to the order of "Douglas A. Miller, def comp," which Plaintiff did not cash but kept as "deferred compensation." According to Plaintiff, these uncashed checks -- which were admitted as evidence at trial -- demonstrate Defendants' intention to pay him the $26,307.43 they represent, and Defendants' failure/refusal to pay him this sum establishes that Defendants are in breach the January 11, 2000 contract as a matter of law.

## II. DISCUSSION

A. PLAINTIFF FAILED TO ADVANCE THE ARGUMENTS HE NOW MAKES IN A PRE-VERDICT MOTION

Fed. R. Civ. P. 50 sets forth the requirements of a Renewed Motion as a Matter of Law. The rule provides in pertinent part:

**(a) Judgment as a Matter of Law**

(1) If during a trial by a jury a party has been finally heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

---

[3] Plaintiff does not challenge the jury's verdict as to damages for breach of the January 19, 2000 Severance Agreement as he prevailed at trial on this claim.

> (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.
>
> **(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial**. If, for any reason the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment -- and may alternatively request a new trial under Rule 59. . . .

Fed. R. Civ. P. 50(a),(b).

As the plain language of the Rule indicates, a post-trial motion for judgment as a matter of law [f/k/a judgment notwithstanding the verdict] can only be made as a renewal of a motion made before the case was submitted to the jury. The Advisory Committee adopted this straightforward interpretation in its discussion of the 1991 amendments to Rule 50, and also explained the purpose behind the Rule's requirements:

> Paragraph (a)(2) retains the requirement that a motion for judgment be made prior to the close of the trial, subject to renewal after a jury verdict has been rendered. The purpose of this requirement is to assure the responding party an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment.
>
> * * *
>
> [Rule 50(b)] retains the concept of the former rule that the post-verdict motion is a renewal of an earlier motion made at the close of the evidence. . . . It remains useful as a means of defining the appropriate issue posed by the post-verdict motion. ***A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion***.

Fed. R. Civ. Pro. 50 Advisory Committee's Note (1991 Amendment) (citations omitted;

5

emphasis added).  *See also, See Johnson v. New York, New Haven & Hartford Railroad,* 344 U.S. 48, 50 (1952); *American and Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 159-60 (6th Cir. 1997) (a post-trial motion for judgment may not advance additional grounds that were not raised in the pre-verdict motion).

In this case, Plaintiff's pre-verdict motion sought a directed verdict on only one issue -- the issue of Defendants' liability for breach of the January 19, 2000 Severance Agreement.  He did not seek judgment as a matter of law on his claims of breach of the January 11, 2000 contract, which is what he now seeks in the instant motion.  Having failed to advance his arguments concerning breach of the January 11, 2000 contract in his pre-verdict motion, he is precluded from raising these grounds now and, therefore, his post-verdict motion for partial judgment notwithstanding the verdict must be denied.[4]

---

[4] Plaintiff's failure to raise his arguments regarding the January 11, 2000 contract in a pre-verdict motion is also fatal to his alternative motion for new trial.  In this case, Plaintiff's alternative motion for new trial is predicated upon the same argument he asserted in seeking JNOV, i.e., that there was insufficient legal evidence to sustain the jury's verdict finding of no breach of the January 11, 2000 contract.  The Sixth Circuit has determined that where no motion for directed verdict was made prior to submission of the case to the jury, the question of the sufficiency of the evidence to support the jury's verdict is not available as grounds for a new trial.  *See ICP Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 545 (6th Cir.1981); *Southern Railway Co. v. Miller*, 285 F.2d 202, 206 (6th Cir.1960).  *See also, County of Anderson v. U.S. Gypsum Co.*, 1985 WL 116 (E. D. Tenn. 1985):

> The plaintiff's assertion that certain evidence regarding liability was uncontroverted is belied substantially by the fact that the plaintiff did not move for a directed verdict at the close of all the evidence.  Since the plaintiff did not move for a directed verdict at the close of all the evidence, it may not now complain that there was insufficient evidence to support the jury's verdict.

B.      EVEN ON THE MERITS, PLAINTIFF'S MOTION WOULD BE DENIED

Furthermore, even if the Court were to consider the merits of Plaintiff's motion, it would be denied.  In a diversity case, a Rule 50 motion which challenges the sufficiency of the evidence is governed by the applicable standard of the forum state. *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175-76 (6th Cir.1996). Because this is a diversity case, Michigan law would apply here.

In *Matras v. Amoco Oil Co.*, 424 Mich. 675, 385 N.W.2d 586 (1986) the Michigan Supreme Court explained the applicable standard as follows:

> In reviewing a trial court's failure to grant a [plaintiff's] motion for a directed verdict or judgment notwithstanding the verdict, we examine the testimony and all legitimate inferences that may be drawn in the light most favorable to [the defendant]. <u>If reasonable jurors could honestly have reached different conclusions, the motion should [be] denied. If reasonable jurors could disagree, neither the trial court nor this Court has the authority to substitute its judgment for that of the jury.</u>

385 N.W.2d at 588 (footnotes omitted; emphasis added).  *See also Meagher v. Wayne State Univ.*, 222 Mich. App. 700, 565 N.W.2d 401, 409 (1997) (a directed verdict or judgment notwithstanding the verdict is appropriate only when there is no factual dispute upon which reasonable minds could differ); *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150, 1152 (6th Cir.1995).

Application of the foregoing authorities establishes the lack of merit in Plaintiff's

---

*Id.* at *1.

7

Motion in this case.

First, with respect to Plaintiff's challenge of the jury's verdict with respect to "unpaid salary," i.e., the paycheck for the week of October 14-20, 2001, Plaintiff's position is that he was precluded from cashing the check because there were insufficient funds in the company's account to cover the check. However, Plaintiff testified that he made only one attempt to cash this paycheck following his termination. He claimed that there were insufficient funds in the Lanzo account to cash the check the one time that he tried to do so, and he made no further attempts to cash the October 2001 check.

Furthermore, there was testimony at trial which contradicted Plaintiff's testimony as to the insufficiency of funds in the company's account. Specifically, Rose Torres testified that at all times through October and November 2001, there were thousands of dollars in the bank account at issue, far more than necessary to cash any and all paychecks presented by Plaintiff. Ms. Torres further testified that, throughout Plaintiff's tenure at Lanzo, Mr. Miller had a habit of retaining and not cashing checks for lengthy periods of time. Ms. Torres' testimony, thus, provides ample support for the jury's conclusion that Plaintiff was not denied the opportunity to cash his paycheck or to receive payment for the pay period in question.

With respect to Plaintiff's claim for payment of 33 checks in the amount of $692.30, each, although the D'Alessandro family members whose signatures appear on these checks testified that the signatures on the checks were theirs, the testimony at trial also was that the D'Alessandros often signed without paying attention to what was being

signed or for what purpose. Both Angelo and Giuseppe D'Alessandro, the signers of most of the checks at issue, testified that they routinely signed hundreds of work-related checks at one time without reviewing or determining whether the checks were authorized or for an approved purpose. Quirino D'Alessandro testified that, although he was not directly involved in the day-to-day business operations of the various Lanzo companies, on occasion, when no other authorized signer was available, members of the office staff would ask him to sign various checks. He stated that he routinely did so, without inquiry, and merely assumed that the checks were appropriate and authorized.

Giuseppe D'Alessandro further testified that after he had taken the checkbooks for Lanzo Holdings from Michigan to Florida and had his staff assemble the financial records for the company, he noticed entries in the records for substantial amounts of "deferred compensation" to Mr. Miller. Giuseppe testified that he questioned Miller about this, and that Miller told him that these entries had been authorized by Angelo and/or Quirino D'Alessandro. Giuseppe further testified, however, that he then telephoned both Angelo, his brother, and Quirino, his father, and that each denied ever having authorized deferred compensation for Plaintiff.

No member of the D'Alessandro family, however, testified to knowingly signing an authorized check intended to be for deferred compensation for Plaintiff. To the contrary, the family members specifically testified that there was never an agreement to establish a deferred compensation plan or account only for Plaintiff Miller or to begin deferred compensation payments in any amount to him. They all testified that Plaintiff

9

had been directed to prepare a deferred compensation plan which would cover family members and key executives, in addition to Plaintiff himself, but that no such plan was ever presented.

In addition, there was also evidence presented at trial suggesting that Plaintiff carefully avoided preparing deferred compensation checks for significant amounts which would have drawn the attention of the D'Alessandro family members, and that he simply directed the staff to enter these amounts in the books of the Company.

In sum, there was ample evidence presented at trial to support the decision of the jury that the checks made payable to the order of "Douglas A. Miller def comp" were unauthorized, and that there was no agreement on the terms of any deferred compensation plan.  Although Plaintiff presented contradictory evidence -- principally through his own testimony -- it was for the jury to decide which evidence to credit and to which evidence it would give greater weight.  The evidence presented was not, however, so "one-sided" that Plaintiff is entitled to a judgment as a matter of law.  Thus, this is not a case in which a judgment as a matter of law could be sustained under Michigan law.

C.     PLAINTIFF'S ALTERNATIVE MOTION FOR PARTIAL NEW TRIAL

The same is true with respect to Plaintiff's Alternative Motion for Partial New Trial.  It is well-established that the grant or denial of a motion for new trial is a matter "confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 189 (1980); *Monette v. AM-7-7 Baking Co., Ltd.*, 929 F.2d 276, 280 (6th Cir. 1991).  As such, the

trial court's decision on a motion for new trial will not be disturbed on appeal unless it is determined that the court abused its discretion. *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989); *Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 675 (6th Cir.2000). Unlike Rule 50(b) motions, a new trial motion even in a diversity case is entirely a matter of federal law. *Tobin v. Astra Pharm. Prod.*, 993 F.2d 528, 541 (6th Cir.1993). With respect to motions for new trial based on the ground that the verdict is against the weight of the evidence, which is the argument Plaintiff makes in this case, the Sixth Circuit has delineated the following standards:

> In ruling upon a motion for new trial based on the ground that the verdict is against the weight of the evidence, a district court must compare the opposing proofs and weigh the evidence. . . , and "it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence . . . ."
>
> \* \* \*
>
> [However,] "courts are not free to reweigh the evidence and set aside the jury verdicts merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.". . . Thus, while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached.

*TCP Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir. 1981) (emphasis added). *See also, Holmes v. City of Massillon*, 78 F.3d 1041, 1046-47 (6th Cir. 1996).

In *Holmes*, the Sixth Circuit explained why the granting of new trial motions on the ground that the verdict was against the weight of the evidence are disfavored and, as such, strictly scrutinized:

11

> Where no undesirable or pernicious element has occurred or been introduced into the trial and the trial judge nonetheless grants a new trial on the ground that the verdict was against the weight of the evidence, the trial judge in negating the jury's verdict has, to some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury.  Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime functions of the jury as the trier of the facts. (Citations omitted). Accordingly, this Circuit has determined that a jury's verdict should not be overturned as being against the weight of the evidence unless that verdict was unreasonable.

*Id.*

As indicated above, the jury's verdict in this case is one that could reasonably have been reached based upon the evidence presented at trial. Therefore, Plaintiff's alternative motion for partial new trial cannot be sustained.

CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's "Motion for Partial Judgment Notwithstanding the Verdict" and his alternative "Motion for Partial New Trial" are DENIED.

                         s/Gerald E. Rosen
                         Gerald E. Rosen
                         United States District Judge

Dated:  March 23, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 23, 2006, by electronic and/or ordinary mail.

                         s/LaShawn R. Saulsberry
                         Case Manager